J-S33031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF N.L.Q., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.L.Q., MOTHER | : : : : : : : | |
| | : | No. 566 MDA 2024 |

Appeal from the Decree Entered April 9, 2024
In the Court of Common Pleas of Franklin County Orphans' Court at
No(s):  48-ADOPT-2023

BEFORE:  OLSON, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: DECEMBER 4, 2024**

Mother C.L.Q. appeals from the order granting the petition filed by the Franklin County Children and Youth Service Agency (the Agency) to terminate her parental rights to N.L.Q. (Child).  Mother argues that the trial court failed to determine whether a bond existed between Mother and Child and erred in concluding that termination would serve Child's best interests.  We affirm.

The underlying facts and procedural history of this matter are well known to the parties.  **See** Trial Ct. Decree, 4/9/24, at 1-5.  Briefly, the trial court granted the Agency temporary emergency protective custody of Child in November of 2022 after Child tested positive for methamphetamines at the time of her premature birth.  **See id.** at 3.  Child was subsequently placed in foster care, where he has resided since late November of 2022.  **Id.**  In December of 2022, the trial court adjudicated Child dependent on grounds that he was without proper care or control.  **Id.** Mother was not present for

the hearing, but was ordered to complete a parenting assessment and a drug and alcohol evaluation, to obtain financial stability and safe and stable housing for Child, and maintain consistent visitation. *Id.* at 3-4. After Mother failed to adequately complete her plan goals, the Agency filed a petition to terminate her parental rights under 23 Pa.C.S. 2511(a)(2) and (a)(5). *Id.* at 4.

The trial court held termination hearings on October 10, 2023 and March 5, 2024.[1] Agency caseworker Stacey Hosfelt testified that Child, who was eleven months' old at the time of the first termination hearing, had been in the same foster home since his birth in November of 2022. *See* N.T., 10/10/23, at 48. Ms. Hosfelt stated that Child calls his foster father "da-da" and gets "very excited when he sees [his foster father,] especially when he comes home in the evenings." *Id.* at 49. Ms. Hosfelt also testified that "if [Child is] upset, he clings to [his foster mother]" and will "crawl over to her just for snuggles." *Id.* Ms. Hosfelt indicated that although there was a bond between Mother and Child "to an extent," that bond was different than the one Child shares with his foster parents, who live with Child on a full-time basis and provide for his needs. *Id.* at 72-73. Ms. Hosfelt also opined that it would be in Child's best interest to terminate Mother's parental rights and

---

[1] Mother does not challenge the trial court's conclusion that termination was warranted under 23 Pa.C.S. § 2511(a)(2), (a)(5). Therefore, we do not address the grounds for termination under Subsection 2511(a). *See Interest of T.C.*, 2024 WL 3085717, at *3 (Pa. Super. 2024).

Child needs "permanency and [Mother] has not made the efforts to rectify the issue that led to [Child's] placement." *Id.* at 52-53.

Visitation coordinator Ryan Kane from Children's Aid Society testified that he observed Mother and Child's interactions for "a solid nine, ten months" and that it was evident that Mother shared a bond with Child. *See* N.T., 3/5/24, at 24. Mr. Kane testified that Mother had initially been consistent with visitation after he began supervising the case in November of 2022. *Id.* However, he indicated that Mother was less consistent during the last quarter of 2023 and "[i]t was more difficult for [Child] to understand what was occurring" during that time. *Id.* at 25-26. Mr. Kane also indicated that there were occasions where Mother had difficultly "staying alert and awake" during visits with Child, although he did not believe that she was intoxicated. *Id.* at 28. He indicated that "when you are caring for an eight, nine month old, that can be cause for concern. . . . [because t]he baby could roll off the couch or roll off her lap at any time" and that although he expressed his concerns to Mother, the problem continued. *Id.* at 28-29.

Mother testified on her own behalf. In relevant part, Mother indicated that she believed she shared a bond with Child and that she was on a positive track towards addressing the issues that led to Child's removal from her care. *Id.* at 57-58, 66. However, when asked if she believed that reunification would be in Child's best interest, she indicated that it was "tricky" because "it's in his best interest to be with his birth mother" but also questioned

whether it was "selfish because he has an amazing foster family[.]" *Id.* at 57.

At the conclusion of the second hearing, Abigail Salawage, Esq., (Child's GAL)[2] opined that termination of Mother's parental rights was in Child's best interest. *Id.* at 94-95. Specifically, Child's GAL explained:

> [Child's GAL]: [F]ocusing on [Child's] best interest, I do believe termination of parental rights and change of goal to adoption is in his best interest. The reality is that he is a one-year-old child. And from his perspective the people who are his parents, the ones who take care of him every day, take him to his multiple doctors' appointments
>
> THE COURT: Would this be a closer case if [Child] was significantly older?
>
> [Child's GAL]: It may be, yes. But I think it would be absolutely traumatic to him to be removed from the home he is in. I do believe he has a bond with his mother. I just don't believe it is the same type of parent/child bond because of the difference in the situation. I do commend Mom for the changes that she's making. Unfortunately, I think that it took us being in court in October for any changes to be made. But from [Child's] standpoint, what is best for him is for him to be adopted by the parents that he knows, and the family that he is a part of.

*Id.* at 94-95.

---

[2] We note that Child's GAL also served as Child's legal counsel. *See In re T.S.*, 192 A.3d 1080, 1089-93 (Pa. 2018) (stating that in situations where a child is non-verbal or is too young to communicate his or her preference, an attorney-guardian *ad litem* may serve a dual role and represent a child's non-conflicting best interests and legal interests). Because Child was under two years old at the time of the second termination hearing, we conclude that the *T.S.* presumption applies. *See also* N.T. 3/5/24, at 94.

Ultimately, the trial court concluded that termination was warranted under 23 Pa.C.S. §§ 2511(a)(2) and (a)(5) and that it was in Child's best interest to terminate Mother's parental rights under 23 Pa.C.S. § 2511(b).

Mother filed a timely notice of appeal. Both Mother and the trial court complied with Pa.R.A.P. 1925.[3]

On appeal, Mother raises the following issue:

Did the trial court fail to properly determine the existence of a bond between [Mother] and [C]hild that would make a termination of [Mother's] parental rights and that termination was in the best interest of [C]hild given the facts at trial?

Mother's Brief at 7 (some formatting altered).

Mother argues that the Agency failed to meet its burden to show that termination was in Child's best interest. *Id.* at 15. In support, Mother notes that several witnesses acknowledged that Mother shares a bond with Child. *Id.* at 15-17. Further, Mother argues that her "efforts to maintain her bond with Child are evidenced in her interactions with Child, her consistency with visitation, and her involvement in Child's medical matters" which "show Mother's care and concern in her relationship with Child." *Id.* at 22. Mother also contends that because Child's foster family is "paid to give care and provide support . . . [w]hat the foster family provides is irrelevant to consideration of [M]other and her bond" with Child, and that allowing Child to

---

[3] We note that the trial court issued a Pa.R.A.P. 1925(a) opinion adopting the reasons set forth in its April 9, 2024 decree setting forth the reasons for terminating Mother's parental rights. *See* Trial Ct. Op., 5/6/24, at 2.

call his foster father "Dada is an active barrier to meaningful relationship with [M]other." *Id.* at 23. Finally, Mother claims that there was "insufficient evidence on the record to show that terminating the bond would not be detrimental" and that she "did not have adequate time to address her issues, but she was maintaining her bond with [C]hild." *Id.* at 23-24.

We begin with our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted). "[T]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re Q.R.D.*, 214 A.3d 233, 239 (Pa. Super. 2019) (citation omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his

- 6 -

or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Section 2511(b) provides as follows:

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. . . .

23 Pa.C.S. § 2511(b).

"[T]he focus in terminating parental rights is on the parent, under Section 2511(a), whereas the focus in Section 2511(b) is on the child." *In re C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*) (citation omitted).

This Court has explained:

While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, . . . the trial court should consider the importance of continuity of relationships . . .

*In re C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (citations omitted and formatting altered), *abrogated in part on other grounds by In re K.T.*, 296 A.3d 1085 (Pa. 2023).

Our Supreme Court has stated that "if the child has any bond with the biological parent, the court must conduct an analysis of that bond, which 'is not always an easy task.'" *K.T.*, 296 A.3d at 1106 (quoting *T.S.M.*, 71 A.3d at 267). In *K.T.*, our Supreme Court explained that "a court conducting the Section 2511(b) needs and welfare analysis must consider more than proof of an adverse or detrimental impact from severance of the parental bond." *Id.* at 1113. Indeed, the *K.T.* Court emphasized that "the parental bond is but one part of the overall subsection (b) analysis, which includes a determination of whether the bond is necessary and beneficial to the child, *i.e.*, whether maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." *Id.*

"Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *T.S.M.*, 71 A.3d at 268 (citation omitted). More specifically, courts must consider "the child's need for permanency and length of time in foster care[;] whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical and emotional needs, including intangible needs of love, comfort, security, safety, and stability." *K.T.*, 296 A.3d at 1113 (footnote omitted).

In weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *T.S.M.*, 71 A.3d at 269. "Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.*

Here, the trial court addressed Section 2511(b) as follows:

[T]he foster family has provided the Child with care and support since birth. The foster family has expressed a willingness to adopt the Child. The foster family has managed the Child's medical needs occasioned by his premature birth and subsequent developmental delays. The Child identifies the foster father as "DaDa" and appears excited when foster father gets home from work. The Child appears to rely on foster mother for support when upset or in distress. The foster family provides appropriate discipline, primarily through redirection. To her credit, Mother acknowledged the Child has an amazing foster family.

By contrast, Mother has at no point fulfilled parental duties to the Child. Although she recently attended a surgery for the Child, she has not been involved in medical decision making, Both Mother and the Children's Aid Society (CAS) case worker testified that Mother's visits with the Child were initially consistent, but became sporadic after Mother ceased couch surfing in the Waynesboro area and moved to Washington County, which required substantial driving to attend visits. Mother had been late to 29 out of 81 visits during the period of time CAS was providing supervision. The CAS caseworker noted that Mother frequently had a hard time staying awake during visits with the Child, but did not think she appeared intoxicated. The caseworker affirmed that Mother appeared to have a bond with the Child based on the Child's responses to Mother's attention (such as giggling or smiling), however the caseworker noted any adult could elicit similar responses from any similarly-aged infant.

Children are entitled to permanency and stability. *Interest of J.B.*, 296 A.3d 1234, 1242 (Pa. Super. 2023). Pennsylvania Courts have long held that a child's life "cannot be put on hold in the hope that [the parent] will summon the ability to handle the

responsibilities of parenting." *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008). Mother cannot preserve her parental rights by "waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004).

The Child is best served by permanency. The testimony of all parties, including Mother, is that the foster family is doing an excellent job caring for the Child. Mother's ability to care for the child, is at best, speculative. The Court finds it is clearly in the best interest of the Child that Mother's parental rights be terminated.

Trial Ct. Decree at 10-11.

Based on our review of the record, we discern no abuse of discretion by the trial court in concluding that termination of Mother's parental rights would best serve Child's developmental, physical, and emotional needs and welfare. *See T.S.M.*, 71 A.3d at 267. Although the trial court acknowledged that a bond existed between Mother and Child, the trial court concluded that Child shares a strong bond with his foster family and that termination of Mother's parental rights would best serve Child's needs. *See* Trial Ct. Decree at 10-11. This Court must accept the trial court's findings of fact and credibility determinations if they are supported by the record, and this Court may not substitute its judgment for that of the trial court in such matters. *See S.K.L.R.*, 256 A.3d 1124; *T.S.M.*, 71 A.3d at 267.

Further, as our Supreme Court explained in *K.T.*, an analysis under Section 2511(b) is not limited to whether severing the parent-child bond will have a detrimental effect on the child. *See K.T.*, 296 A.3d at 1113. The trial court must also consider other factors such as the child's need for

permanency, the length of time the child has been in foster care, whether the child is in a preadoptive home, the child's bond with foster parent[s], and whether the foster home "meets the child's developmental, physical and emotional needs, including intangible needs of love, comfort, security, safety, and stability." **See id.**

As noted previously, the record reflects that Child has lived with his foster parents since his birth and shares a parental bond with his foster parents, who consistently meet Child's needs. **See** Trial Ct. Op. at 10-11. Therefore, we agree with the trial court that the Agency presented clear and convincing evidence demonstrating that termination of Mother's parental rights would serve Child's best interests. **See T.S.M.**, 71 A.3d at 267; **L.M.**, 923 A.2d at 511. Accordingly, we affirm.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/04/2024

- 11 -